**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
HAKKI HAYRIOGLU,

                              Plaintiff,

                                                          **MEMORANDUM OF**
                  -against-                              **DECISION AND ORDER**
                                                          10-cv-3126 (ADS)(AKT)
GRANITE CAPITAL FUNDING, LLC,
METROPOLITAN NATIONAL BANK
MORTGAGE COMPANY LLC, US BANK
HOME MORTGAGE,

                              Defendants.
-----------------------------------------------------------X

**APPEARANCES:**

**Stephen A. Katz, P.C.**
*Attorneys for the plaintiff*
111 John Street
Suite 800
New York, NY 10038-3180
          By:    Stephen A. Katz, Esq., of Counsel

**Moritt Hock Hamroff & Horowitz LLP**
*Attorneys for the defendant Metropolitan National Bank Mortgage Company LLC*
400 Garden City Plaza
Garden City, NY 11530
          By:    Michael S. Re, Esq.
                  Stephen Justin Ginsberg, Esq., of Counsel

**Duane Morris, LLP**
*Attorneys for the defendant US Bank Home Mortgage*
744 Broad Street
Suite 1200
Newark, NJ 07102
          By:    Sheila Raferty Wiggins, Esq., of Counsel

**NO APPEARANCE:**

Granite Capital Funding, LLC

**SPATT, District Judge.**

The plaintiff in this case, Hakki Hayrioglu, asserts that the defendants are liable for their respective roles in issuing him a mortgage that they knew he could not repay. The defendants Metropolitan National Bank Mortgage Company LLC ("Metropolitan National") and US Bank Home Mortgage ("US Bank", and with Metropolitan National, the "Moving Defendants") now each move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the plaintiff's complaint for failure to state a claim. The third defendant, Granite Capital Funding, LLC ("Granite Capital") has not made an appearance in this case. For the reasons that follow, the Court grants the Moving Defendants' motions to dismiss the complaint.

## I. BACKGROUND

This case arises out of an alleged "no-doc loan" made to the plaintiff during the summer of July 2007. The "no-doc loan", which was not uncommon in the pre-2008 era of easy consumer credit, is a home loan that is based on the borrower's statement of income and assets without supporting documentation. See, e.g., Alina Tugend, "What You Need to Know to Get a Mortgage", N.Y. Times, June 1, 2008, at RE1 (noting that by the summer of 2008, "[m]ost lenders [were] no longer willing to settle for stated income, without document verification, preferring instead that applicants provide all the necessary paperwork to prove income."). In short, the plaintiff in this case alleges that in issuing him a no-doc loan, the defendants caused him to misstate his income and then wrongfully lent him far more money than he could repay.

Before describing the plaintiff's allegations in detail, the Court will briefly discuss the bases for the ensuing discussion. First, as is required on a motion to dismiss, the Court accepts all of the plaintiff's well-pleaded facts as true. In addition, the Moving Defendants have submitted to the Court a number of documents related to the plaintiff's mortgage loan that the Court finds are incorporated by reference in the plaintiff's complaint. (See Guarino Aff., Exs. A–F.) The Court will consider these documents in deciding the present motion. See, e.g., Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

Also, in opposition to the Moving Defendants' motions, the plaintiff submitted his own affidavit setting forth additional facts not alleged in his complaint. Generally, such evidence is not to be considered at this stage of the case. In addition, the plaintiff states in his affidavit that he "cannot read English" and speaks "very little English", (Hayrioglu Aff., ¶ 4), but then does not explain how he learned the contents of the affidavit before signing it. Nevertheless, rather than permit the plaintiff to cure these errors by amending his complaint, the Court *for the purpose of this motion only* will treat the plaintiff's affidavit as supplementing his allegations in the complaint. The Court does this in the interest of judicial economy and, because the Court finds that these additional facts do not alter the outcome of the present motions. The Court will now turn to a recitation of the facts in this case.

The plaintiff Hakki Hayrioglu is a forty-nine year old Turkish immigrant. Hayrioglu came to the United States in 2003, and now works as a livery cab driver.

In 2007, when he entered into the loan that is the subject of this case, Hayrioglu's annual income was approximately $24,300, which amounted to approximately $2,025 per month.

On April 30, 2007, Hayrioglu contracted with one Deborah Benzer to purchase from her a home at 65 Dobson Avenue, Merrick, NY 11566 (the "Dobson Avenue Property"). Although the plaintiff's complaint is ambiguous on this point, the Residential Contract of Sale dated April 30, 2007 indicates that Hayrioglu was already represented at that time by New York attorney Margaret Mayora, Esq. (Guarino Aff., Ex. A at 9.) The purchase price for the home was $508,800, and Hayrioglu paid just over $100,000 of that price in cash. The plaintiff then sought a mortgage loan to cover the balance that he owed on the purchase price.

The first lender that the plaintiff approached for a loan rejected the plaintiff's application. However, on or about July 16, 2007, the plaintiff's attorney Margaret Mayora "found the mortgage broker Granite Capital Funding and the lender Metropolitan National Bank for Hayrioglu." (Compl., ¶ 11.) As mortgage broker, Granite Capital arranged for Metropolitan National to loan Hayrioglu the balance of the purchase price for the Dobson Avenue Property, which amounted to $407,040. On July 30, 2007, Metropolitan National and Hayrioglu consummated the mortgage loan, and Hayrioglu and Deborah Benzer closed on the purchase of the property.

According to the loan documents incorporated by reference in the plaintiff's complaint, the mortgage loan that Metropolitan National extended to Hayrioglu had a 30-year repayment period and a fixed interest rate of 6.375%. (Guarino Aff., Ex.

B.)  After adding payments for taxes and insurance, Hayrioglu's monthly payment obligation to service the loan was $3,212.96 for the first year.  (Id., Ex. G.)  This exceeded his actual gross monthly income by approximately $1,200.

Among the documents executed by Hayrioglu on July 30, 2007 was a "Uniform Residential Loan Application."  This four-page document is completed in type, and the third page of the application relates that it was filled out by a Judah Langer of Metropolitan National, based on a telephone interview with the plaintiff—although the plaintiff "does not recall" this interview.  (Id., Ex. D at 3; Compl., ¶ 5.)  The application states the basic terms of the mortgage, including the principal to be loaned, the interest rate, and the repayment period.  It also states on its second page that the plaintiff has a monthly income of $8,950.00.  (Guarino Aff., Ex. D at 2.)  The plaintiff's initials appear at the bottom of this second page, as well as on the application's first page.  His full signature then appears on both the third and fourth pages of the application.  The plaintiff did not submit any other documents to any of the defendants to corroborate that this was an accurate statement of his income.

Fourteen months after the closing date, in September 2009, the plaintiff defaulted on his mortgage for the Dobson Avenue Property.  Ten months after that, on July 8, 2010, the plaintiff commenced the present action in this Court against Granite Capital, Metropolitan National, and US Bank.  Unlike Granite Capital and Metropolitan National, US Bank is not alleged to have been involved in issuing the plaintiff's mortgage.  However, the plaintiff alleges that US Bank purchased his

loan from Metropolitan National sometime before he commenced this action, and that it is derivatively liable based on that fact.

The plaintiff's basic contention in this lawsuit is that the defendants took advantage of him; a recent immigrant with a working-class job who speaks "very little English", to foist upon him a debt that the defendants knew he could never afford. To be sure, the plaintiff does not deny that he signed the loan application and related documents. However, he alleges that he never knew the contents of the documents, and that the misstatement of his monthly income was generated solely by the defendants. He also alleges that he understood Metropolitan National's decision to issue a loan to him to be an affirmative indication that he could afford to repay the debt he was assuming.

Based on these allegations, the plaintiff alleges three causes of action, in the following order: (1) violation of New York's Deceptive Practices Act, NYGBL § 349; (2) common law fraud; and (3) violation of the Credit Repair Organizations Act, 15 U.S.C. §§ 1679–79j. On December 7, 2010, Metropolitan National moved to dismiss all of the plaintiff's claims against it for failure to state a valid claim. Approximately two weeks later, on December 22, 2010, US Bank also moved to dismiss the plaintiff's claims. The plaintiff opposes both motions to dismiss. The defendant Granite Capital has entered no appearance in this case, and has neither answered the complaint nor moved to dismiss.

## II. DISCUSSION

### A. Legal Standard on a Motion to Dismiss

Under the now well-established <u>Twombly</u> standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after <u>Twombly</u>, the Court's inquiry under Rule 12(b)(6) is guided by two principles. <u>Harris v. Mills</u>, 572 F.3d 66 (2d Cir. 2009) (quoting <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" <u>Id</u>. (quoting <u>Iqbal</u>, 129 S. Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" <u>Id</u>. (quoting <u>Iqbal</u>, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." <u>Iqbal</u>, 129 S. Ct. at 1950.

**B. As to Metropolitan National's Motion to Dismiss**

**1. As to the Plaintiff's First Cause of Action Against Metropolitan National: Violation of New York's Deceptive Practices Act, NYGBL §349**

The plaintiff's first cause of action is based on a violation of New York's Deceptive Practices Act, codified at NYGBL § 349. Generally, to state a claim for violation of Section 349, a plaintiff must allege facts showing "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." Stutman v. Chemical Bank, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (N.Y. 2000). Here, the Court understands the plaintiff to assert that Metropolitan National violated this statute by (1) misstating Hayrioglu's monthly income on his loan application, (2) failing to require Hayrioglu to provide documentation to prove his income, and (3) making the home loan to Hayrioglu. Metropolitan National denies that any of this alleged conduct violates Section 349. The Court agrees.

As an initial matter, the plaintiff has not alleged facts showing that Metropolitan National's conduct was consumer-oriented. Generally, "[p]rivate contract disputes, unique to the parties, for example, [do] not fall within the ambit of [Section 349]." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N. A., 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (N.Y. 1995). Rather, to prevail on a Section 349 claim, a plaintiff "must demonstrate that the acts or practices have a broader impact on consumers at large." Id. To satisfy this requirement in the context of a real estate transaction, courts have generally

required that a plaintiff allege that the defendant affirmatively and publicly sought transactions with consumers. See Sheehy v. New Century Mortg. Corp., 690 F. Supp. 2d 51, 74–75 (E.D.N.Y. 2010) (collecting cases and stating that "when courts have found § 349 applicable in the context of real estate transactions, they have usually done so where defendant published advertisements or otherwise solicited the general public"); Barkley v. Olympia Mortg. Co., No. 04-cv-875 *et al.*, 2010 WL 3709278, *19 (E.D.N.Y. Sept. 13, 2010) (stating the same).

Here, the plaintiff has not alleged any facts showing that Metropolitan National actively and broadly solicited consumers. To the contrary, the plaintiff alleges that he, by his attorney, located Metropolitan National through a broker. Further, he did so only *after* contracting to purchase the Dobson Avenue Property, and *after* seeking credit from another source. The Court thus finds that the plaintiff has not alleged facts that satisfy the first prong of the Section 349 standard.

Similarly, the Court finds that the plaintiff has not shown that Metropolitan National's conduct was materially misleading. Under New York law, the second prong of the Section 349 standard requires a showing that the acts alleged "were likely to mislead a reasonable consumer acting reasonably under the circumstances." Corsello v. Verizon New York, Inc., 77 A.D.3d 344, 365, 908 N.Y.S.2d 57 (2d Dep't 2010). In the Court's view, no reasonable consumer would have been misled by the alleged acts of Metropolitan National.

As noted above, Hayrioglu identifies three allegedly misleading acts by Metropolitan National. The first two of these allegedly misleading acts—misstating Hayrioglu's monthly income on his loan application and failing to require

Hayrioglu to provide documentation to prove his income—could not be bases for the plaintiff's claim. The plaintiff cannot plausibly assert that he *believed* Metropolitan National's misstatement of his own income, or that Metropolitan National's alleged failure to request documentation of his income mislead him about his own income level. Rather, these allegations at best establish the background for what the plaintiff claims is Metropolitan National's truly misleading act: causing him to believe that he could afford to repay his mortgage when Metropolitan National knew that he could not. However, given the facts alleged here, this does not state a plausible cause of action.

To be sure, predatory lending schemes intended to drive unsophisticated consumers into making ill-advised financial choices have worrisome social effects, and at times have been found to violate the law. See, e.g., Vaughn v. Consumer Home Mortgage, Inc., No. 01-cv-7937, 2003 WL 21241669, **1–3 (E.D.N.Y. Mar. 23, 2003) (finding that valid fraud and Section 349 claims had been stated based on allegations of a scheme involving multiple actors who conspired to inflate the price of homes, lie about promised repairs to the property, and then convince poor minority consumers to purchase the homes with unfavorable financing).

Here, however, even assuming that Metropolitan National's extension of credit to the plaintiff was an implied assertion that he could afford to repay his loan, a reasonable consumer would not have been misled by such a statement. As noted above, the plaintiff's initials or signature appear on each of three separate forms—including a plainly worded truth-in-lending disclosure—that state that his monthly mortgage obligation would be at least $2,539.40, and as much as $3,213.00.

(Guarino Aff., Exs. E, F, and G.) Hayrioglu knew or should have known that his monthly income was substantially less than these amounts.

The plaintiff challenges this conclusion by alleging that, during the closing, he "was required to sign many documents without being given time to read them," (Compl., ¶ 19), and that he does not read English and speaks "very little" English. (Hayrioglu Aff., ¶ 4.) However, to the extent that the plaintiff failed to read the documents he signed because he was incapable of reading English, the plaintiff was affirmatively obligated to ask for assistance in understanding them. See, e.g., Golden Stone Trading, Inc. v. Wayne Electro Systems, Inc., 67 A.D.3d 731, 732–33, 889 N.Y.S.2d 72 (2d Dep't 2009) ("A party who executes a contract is presumed to know its contents and to assent to them and an inability to understand the English language, without more, is insufficient to avoid this general rule." (internal quotations, citations, and alterations omitted)). Here, the plaintiff has not alleged that he asked for any assistance in understanding the documents he signed at closing, or that any of the defendants misrepresented the contents of those documents. Moreover and significantly, the plaintiff was represented by counsel in his dealings with Metropolitan National, including, presumably, during the closing.

The fact that the plaintiff was represented by counsel also undermines the plaintiff's allegation that he did not have time to read the documents he signed. Even more important with regard to this allegation is that three of the documents that the plaintiff signed or initialed were relatively simple, single-page documents whose sole purpose was to disclose the plaintiff's payment obligations under the mortgage. (Guarino Aff., Exs. E, F, and G.) The Court does not find it plausible

that, with an attorney present, the plaintiff could not have reviewed the basic information provided in these documents.

Finally, it is the Court's view that a reasonable consumer purchasing a home valued at more than a half a million dollars would do the few easy mathematical calculations required to determine his repayment obligations under what was a relatively simple loan. Thus, if the plaintiff did not have an attorney present and did not have time or the ability to read the documents he signed, it was still not reasonable for the plaintiff to fail to determine his repayment obligation under the loan.

Nevertheless, the plaintiff also maintains that his Section 349 claim is valid based on the holdings of six cases where plaintiffs were permitted to proceed on Deceptive Practices Act claims against persons involved in alleged predatory lending. However, two of those cases, Popular Financial Services, LLC v. Williams, 50 A.D.3d 660, 661, 855 N.Y.S.2d 581 (2d Dep't 2008) and Delta Funding Corp. v. Murdaugh, 6 A.D.3d 571, 572, 774 N.Y.S.2d 797 (2d Dep't 2004), provide no description of the relevant alleged facts and no explanation of the court's reasoning in permitting the claims to proceed. They are therefore not persuasive.

The remaining four opinions provide a more substantial explanation for the courts' holdings, but each case also describes a broad scheme involving affirmative efforts to mislead home purchasers about the condition of the homes being sold, the terms of their loans, or the lenders' interests. See Williams v. Aries Financial, LLC, No. 09-cv-1816, 2009 WL 3851675, **10–11 (E.D.N.Y. Nov. 18, 2009)

(permitting a Section 349 claim based on, among other things, allegations that the defendants hid from her the onerous and complex terms of her home loan); Cruz v. HSBC Bank, N.A., 21 Misc.3d 1143(A) (Table), 2008 WL 5191428, *2 (N.Y. Sup. Richmond Cty. 2008) (permitting a Section 349 claim where, among other things, the plaintiff alleged that the defendants failed to disclose the risks of the plaintiff's mortgage loan and concealed defects in the property the plaintiff was purchasing); Barkley v. Olympia Mortg. Co., No. 04-cv-875 *et al.*, 2007 WL 2437810, *18 (E.D.N.Y. Aug. 22, 2007) (permitting Section 349 claims based on an allegation that the defendants conspired to have homes appraised at inflated prices, and then targeted unsophisticated consumers to purchase these homes with mortgages provided by the defendants); M & T Mortg. Corp. v. Miller, 323 F. Supp. 2d 405, 409–11 (E.D.N.Y. 2004) (permitting Section 349 claims based on a scheme to target minority consumers and cause them to purchase homes based on misstatements about the properties).

Here, the terms of the plaintiff's loan were not only plainly disclosed, they were also reasonable—the loan had a modest fixed interest rate and would be repaid in equal installments over the course of thirty years. More importantly, the plaintiff contracted to purchase the Dobson Avenue Property before he had any contact with Metropolitan National, and himself solicited Metropolitan National for a loan. By contrast, the cases that the plaintiff relies on involve efforts by persons to coerce consumers into purchasing properties and unwisely taking on bad debt. Here, the fact that the plaintiff sought and received a loan he could not afford does not mean that he can now proceed on a Section 349 claim against the party that made his

mistake possible.  The Court therefore also finds that the plaintiff cannot satisfy the second prong of the Section 349 test—namely, that the defendants made material, misleading statements—and grants Metropolitan National's motion to dismiss the plaintiff's Section 349 claim against it.

In addition, the Court notes that Metropolitan National maintains that the plaintiff has also failed to allege facts showing that he suffered damages from Metropolitan National's acts.  In the Court's view, this contention presents a closer issue, and based on the fact that the Court finds that the plaintiff has not satisfied the first two provisions of the Section 349 test, the Court declines to address the issue of damages.

### 2. As to the Plaintiff's Second Cause of Action Against Metropolitan National: Common Law Fraud

The plaintiff's second cause of action against Metropolitan National is for fraud, based on (1) Metropolitan National's alleged false statement that the plaintiff's monthly income was $8,950, and (2) Metropolitan National's alleged false implied statement that the plaintiff could afford to repay the loan it issued to him.  Similar to the plaintiff's Section 349 claim, this cause of action fails because the plaintiff's reliance on these alleged statements was not reasonable.

To state a cause of action for common law fraud in New York, a plaintiff must allege facts showing: "[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury."  <u>Premium Mortg. Corp.</u>

v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009) (internal quotations omitted, alterations in original).  In addition, these facts must be plead with particularity.  Id. Here, Metropolitan National has challenged the sufficiency of several of these elements, as well as the sufficiency of the specificity of the plaintiff's pleading. However, because the Court finds that the issue of reasonable reliance plainly negates the plaintiff's fraud claim, the Court addresses only that issue.

Assuming, then, that Metropolitan National did make the two statements to the plaintiff that the plaintiff has identified—a conclusion that is not obvious—the Court finds that neither statement could be reasonably relied upon by the plaintiff. First, with respect to the alleged false statement of the plaintiff's income, the plaintiff's complaint suggests that he did not even know that Metropolitan National made this statement.  Thus,  it is difficult to contemplate how the plaintiff could have relied on such a statement.  More importantly, even if the plaintiff was aware of the statement, it would certainly not have been reasonable for the plaintiff to rely on Metropolitan National's claim that his monthly income was approximately $7,000 more than he believed it to be.

As for Metropolitan National's alleged statement that the plaintiff could afford to repay his loan, the Court finds that, for reasons substantially similar to those discussed in the context of the Section 349 claim, the plaintiff could not have reasonably relied on this implied statement.  First, the plaintiff signed multiple documents that plainly set forth his monthly obligation under the loan, and that showed that this obligation substantially outstripped what he knew to be his monthly income.  There are no allegations that Metropolitan National lied to him

about the contents of these documents, and the Court again emphasizes that the plaintiff was represented by counsel in his interactions with Metropolitan National. In addition, a few relatively simple mathematical calculations would have revealed to the plaintiff that, even under the reasonable terms presented by Metropolitan National, his payment obligation on the loan he was seeking was going to exceed his monthly income. The Court thus cannot conclude that the plaintiff's reliance on Metropolitan National's alleged statements was reasonable, and the plaintiff's fraud claim against Metropolitan National must fail. The Court therefore grants Metropolitan National's motion to dismiss the plaintiff's fraud claim.

### 3. As to the Plaintiff's Third Cause of Action Against Metropolitan National: Violation of the Credit Repair Organizations Act

The plaintiff's final cause of action against Metropolitan National is for violation of the Credit Repair Organizations Act, 15 U.S.C. §§ 1679–79j ("CROA"). Specifically, the plaintiff relies on 15 U.S.C. § 1679b(a)(1), which provides that:

> No person may--
>
> (1) make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading (or which, upon the exercise of reasonable care, should be known by the credit repair organization, officer, employee, agent, or other person to be untrue or misleading) with respect to any consumer's credit worthiness, credit standing, or credit capacity to-- . . . (B) any person-- . . . (ii) to whom the consumer has applied or is applying for an extension of credit . . . .

According to the plaintiff, Metropolitan National violated this provision by misstating his monthly income on his loan application as $8,950, when his monthly income was actually $2,025. Metropolitan National counters that this statute does

not apply to it because it is not a "credit repair organization." Moreover, asserts Metropolitan National, even if the statue did apply and it did make a false statement about the plaintiff's income, that statement was made *to itself*, and therefore cannot be actionable.

Federal district courts have disagreed as to whether Section 1679b(a) of the CROA applies to lending institutions such as Metropolitan National, which are generally excluded from the definition of "credit repair organization". See 15 U.S.C. § 1679a (excluding banks and depository institutions from the definition of credit repair organization); see also, e.g., Henry v. Westchester Foreign Autos, Inc., 522 F. Supp. 2d 610, 613 (S.D.N.Y. 2007) (holding that the term "person" in Section 1679b(a) refers only to credit repair organizations); but see, e.g., Greene v. CCDN, LLC, --- F.Supp.2d ----, No. 08-cv-6165, 2011 WL 1098952, *9 n. 15 (N.D.Ill. Mar. 25, 2011) (holding that Section 1679b(a) applies to all persons, and collecting cases); Poskin v. TD Banknorth, N.A., 687 F. Supp. 2d 530, 542–48 (W.D.Pa. 2009) (holding same). In the Court's view, the statute is ambiguous on this issue. However, the Court declines to decide that issue definitively, as the Court finds that even if Section 1679b(a) does apply to Metropolitan National, the company did not violate the statute.

Turning to the alleged substantive violation of Section 1679b(a), the parties agree that, to the extent that Metropolitan National made any false statement about the plaintiff's income, that statement was made to Metropolitan National itself. The plaintiff maintains that Metropolitan National's alleged false statement nevertheless violates Section 1679b(a). The Court disagrees.

The stated purposes of the CROA are:

(1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and

(2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

15 U.S.C. § 1679. The Court finds that the strained reading of the statute that the plaintiff advocates—where a false statement made to one's self can be contrary to law—is inconsistent with the description of the statute's purpose. At least one other district court has also agreed that this is not a sensible understanding of the statutory language or of the Congress's intent. Whitley v. Taylor Bean & Whitacker Mortg. Corp., 607 F. Supp. 2d 885, 899 (N.D.Ill. 2009) ("Plaintiffs have not provided case law to support their position that a person can be liable under the CROA for making a false statement to itself, and this Court is unwilling to establish such a novel precedent."). To be sure, the plaintiff points out that the holding in Poskin, 687 F. Supp. 2d at 542–49 suggests that that court came to a contrary conclusion. However, that court did not address the issue directly, and to the extent that its holding is inconsistent with the Court's present holding, the Court finds that decision not to be persuasive. Accordingly, the Court grants the Defendant Metropolitan National's motion to dismiss the plaintiff's CROA claim against it, on ground that the plaintiff has not alleged any actionable false statement by Metropolitan National.

### C. As to US Bank's Motion to Dismiss

Although the plaintiff has not alleged that US Bank had any direct involvement with the issuance of the plaintiff's mortgage loan, the plaintiff is asserting claims against US Bank because it purchased from Metropolitan National the right to recover on the plaintiff's mortgage. Against US Bank, the plaintiff asserts all three of the causes of action that it asserts against Metropolitan National. The plaintiff essentially maintains that US Bank has assignee liability for Metropolitan National's conduct, as well as liability for purchasing a loan that it allegedly knew the plaintiff could not repay. Like Metropolitan National, US Bank has now moved to dismiss the plaintiff's causes of action against it.

The Court need not address the extent to which US Bank may be liable as an assignee of the plaintiff's mortgage, because the Court has already found that the plaintiff has not stated any substantively valid claim against Metropolitan National itself. Thus, the plaintiff has not stated any valid derivative claims against US Bank. In addition, the plaintiff provides no valid support for any direct liability against US Bank for accepting the assignment of the plaintiff's loan. Thus, for substantially identical reasons to those discussed with respect to Metropolitan National's motion to dismiss, the Court now grants US Bank's motion to dismiss all of the plaintiff's claims against it.

As a final issue, US Bank has stated that, even if the plaintiff's claims against it are all dismissed, US Bank should remain as a necessary party to this case under the provisions of Fed. R. Civ. P. 19. US Bank notes that the plaintiff seeks to rescind his mortgage, and that as holder of that mortgage, US Bank must be a party

to this action if the plaintiff continues to seek that remedy. The Court agrees. While the Court has dismissed all of the plaintiff's claims against Metropolitan National and US Bank, the plaintiff continues to have claims pending against Granite Capital, which has not appeared in this case. The plaintiff also continues to seek rescission of his mortgage based on those claims. Thus, as holder of the plaintiff's mortgage, US Bank will remain as a necessary party to this case.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the defendant Metropolitan National's motion to dismiss the plaintiff's claims against it is granted; and it is further

**ORDERED** that the defendant US Bank's motion to dismiss the plaintiff's claims against it is granted; and it is further

**ORDERED** that US Bank is to remain as a necessary party to this litigation pursuant to Fed. R. Civ. P. 19; and it is further

[remainder of page intentionally left blank]

**ORDERED** that the Clerk of the Court is respectfully directed to amend the

caption in this case to read as follows:

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
HAKKI HAYRIOGLU,

                            Plaintiff,

             -against-

GRANITE CAPITAL FUNDING, LLC, and US
BANK HOME MORTGAGE,

                            Defendants.
---------------------------------------------------------X


**SO ORDERED.**

Dated: Central Islip, New York
July 5, 2011

                                            _  /s/ Arthur D. Spatt_____
                                              ARTHUR D. SPATT
                                            United States District Judge